IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

FILED
MAY 27 2005
MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

Elijah Baptist, )
)
Plaintiff, )
v. )
) No. 05 C 768
Illinois Department of Corrections )
Correctional Officer S. Ratliff; John ) The Hon. Milton I. Shadur
or Jane Doe, an unknown Illinois )
Department of Corrections Probation )
Officer, and the State of Illinois )
)
Defendants. )

## AMENDED COMPLAINT

This is an action for injunctive relief to remedy and for damages to compensate Baptist for injuries he suffered by the acts of the defendants' when they, by their various acts described below, deprived him of his rights as guaranteed by the United States Constitution. Baptist seeks the relief from the above-named defendants and states the following for his complaint:

### PARTIES

1. Plaintiff Elijah Baptist resides at 12240 S. Loomis Street, in the City of Chicago. He has been on parole for a conviction dating back to the mid 1970s since 1991. The basis for his complaint relates to a several-month period in 2004 when his parole was illegally revoked.

2. Defendant John or Jane Doe was, at all relevant times mentioned in this complaint, employed by the defendant State of Illinois as a parole officer.

3. Defendant S. Ratliff was, at all relevant times mentioned in this complaint, employed by the defendant State of Illinois as a correctional officer at Centralia Correctional Center.

4. Defendant A.C. Kinard was, at all relevant times mentioned in this complaint, employed by the defendant State of Illinois as the District Supervisor for the Illinois Department of Corrections.

5. Defendant State of Illinois, at all relevant times mentioned in this complaint, operates the Illinois Department of Corrections and the Illinois Prisoner Review Board. It employed defendants Ratliff, Doe, and Kinard.

## BACKGROUND FACTS

6. Between August 1974 and October 1991, Baptist was incarcerated by the Illinois Department of Corrections after being convicted for a violation of 720 ILCS 5/9-1 in connection with a murder that happened on July 28, 1974. Baptist was sentenced to 60 to 80 years in prison.

7. When he entered the Department of Corrections, Baptist's projected release date was November 12, 2015. But by 1991, based on the "good time" credits he earned while in prison, his projected sentence discharge date was May 27, 2011.

8. Shortly after being paroled, Baptist visited his parole officer, Ralph Norman. Among other things discussed at that initial meeting, Baptist was told to contact Norman once per month by telephone.

9. Baptist checked in by telephone as instructed for a period of six months. After the six-month period, Norman told Baptist that he only needed to check in if he needed something.

10. After that six-month period, there was one time that Baptist needed Norman's assistance so Baptist contacted Norman. Specifically, in early May of 1992, Baptist asked Norman to assist him with getting permission to visit Baptist's brother, who was then incarcerated in the Menard Correctional Center. Norman forwarded this request, which he also approved, to George Welborn, who was the warden at Menard.

11. On May 20, 1992, Welborn granted this request. Shortly thereafter, Baptist visited his brother. After that time, Baptist had little, if any contact with Norman.

12. From the time that Baptist was released on parole in 1991 until the time that he was illegally returned to prison in 2004, he held various jobs. He has worked as a telemarketer, worked in a restaurant, worked as a truck driver, worked in landscaping, worked as a security guard, performed community service at his local Alderman's office, and has sometimes been active working for other local politicians or political hopefuls.

13. The most recent position that Baptist held prior to being illegally returned to prison was with Hecker & Company in the Northwest suburbs of Chicago, Illinois.

14. In the summer of 2004, almost 13 years after originally having been paroled, Baptist arrived at work early in the morning. At about 6:45 a.m. he was with his foreman when a Glenview, Illinois police officer asked him for his identification. The officer told Baptist that there was a warrant for his arrest. Baptist was taken to the police station.

15. Shortly thereafter, his parole officer arrived and took Baptist to Statesville Correctional Center. Baptist was housed in the condemned unit for two weeks. At no point in time at Statesville was Baptist notified of a preliminary hearing to determine the validity of the arrest warrant or validity of the parole revocation.

16. After that two-week period of custody without a preliminary hearing or notice of a preliminary hearing or permanent hearing, Baptist was transferred to Centralia Correctional Center.

17. On July 19, 2004, Baptist was asked to sign, and did sign, a document purportedly waiving a preliminary hearing. But at no point up to and including that time, was Baptist given any definite time or actually presented with the option of a preliminary hearing.

18. Upon information and belief, defendant officer Ratliff, who co-signed this document with Baptist, did not notify Baptist of a date on which a preliminary hearing would take place, nor did Ratliff cause or ever intend to cause a preliminary hearing to take place.

19. Baptist never received a preliminary hearing on his parole revocation. Not until September 1, 2004, did Baptist appear before the Parole Board. At that time, the Board told Baptist that they would further investigate the alleged violation that lead to the issuance of a warrant and ultimately to revocation of his parole.

20. Baptist was not, in fact, "AWOL" at any point during his parole as falsely charged in the Violation Report. Nor did Baptist leave the state or his parole

zone without permission of his parole officer. Furthermore, Baptist did not fail to seek or maintain employment or training. On the contrary, Baptist actively sought work *and* training in several fields. Finally, Baptist did not fail to submit status reports to his parole officer. Baptist's parole officer specifically stated that he was to check in only on an "as needed" basis after the first six months of parole.

21. Baptist did not hear anything about the revocation hearing for several weeks. Finally, on September 23, 2004, Baptist was called out of his cell and told that he was going home.

22. Without even relying on the underlying fact that Baptist was not, in fact, "AWOL" as accused, the Prison Review Board noted that the violation report, upon which the warrant for Baptist's arrest was based, was facially invalid.

23. Baptist was consequently re-released on parole.

24. Also that day, Baptist received and signed a document entitled "Parole or Mandatory Supervised Release Agreement." According to the Parole or Mandatory Supervised Release Agreement, Baptist's discharge date from parole would be May 8, 2014. Previously, Baptist's projected discharge date had been May 27, 2011. Baptist was never informed of this increase or given an opportunity to respond or challenge this increase in the duration of his parole.

25. While Baptist was incarcerated for this alleged parole violation, his car was repossessed and sold. The car had been financed through GMAC which has informed him that he still owes about $6,000 on that vehicle even though he no longer has it.

26. After Baptist was released, despite the repossession of his car, he returned to work at Hecker and Company. He worked there for several months, but was ultimately laid off.

27. At the time Baptist was laid off, he was a non-union employee for Hecker.

28. Prior to being arrested and incarcerated in the summer of 2004, Baptist was also a non-union employee. But for the illegal incarceration for the alleged parole violation, Baptist would have acquired enough hours to become a member of the International Brotherhood of Electrical Workers Union. Had he become a member of that union, Baptist would not have lost his job with Hecker. As a union member, Baptist would also have received an increase in pay.

## COUNT I
## FAILURE TO PROVIDE ADEQUATE NOTICE OF PRELIMINARY HEARING AGAINST CORRECTIONAL OFFICER S. RATLIFF

29. Baptist incorporates by reference paragraphs 1 through 28 as if fully set forth here as part of Count I.

30. After Baptist was arrested, he was constitutionally required to receive a notice of a preliminary hearing on the charges against him.

31. The defendants breached that duty by failing to provide a preliminary hearing at which the facial invalidity of the Violation Report and the warrant would have become apparent.

32. As a direct and proximate result of this breach, Baptist suffered harm, including the loss of his car and his job (including past and future lost wages), the

loss of his freedom as well as associated emotional harm from being wrongly incarcerated.

Wherefore, Baptist respectfully requests that he be awarded damages in an amount to be proven at trial together with his costs and attorneys fees.

## COUNT II
### FAILURE TO GRANT PRELIMINARY HEARING ON PAROLE REVOCATION AGAINST CORRECTIONAL OFFICER S. RATLIFF.

33. Baptist incorporates by reference paragraphs 1 through 28 as if fully set forth here as part of Count II.

34. After Baptist was arrested, he was constitutionally required to receive a preliminary hearing on the charges against him.

35. The defendants breached that duty by failing to provide a preliminary hearing at which the facial invalidity of the Violation Report and the warrant would have become apparent.

36. As a direct and proximate result of this breach, Baptist suffered harm, including the loss of his car and his job (including past and future lost wages), the loss of his freedom as well as associated emotional harm from being wrongly incarcerated.

Wherefore, Baptist respectfully requests that he be awarded damages in an amount to be proven at trial together with his costs and attorneys fees.

## COUNT III
### ISSUING A FACIALLY-INVALID WARRANT
### AGAINST DEFENDANTS JANE OR JOHN DOE AND A.C. KINARD

37. Baptist incorporates by reference paragraphs 1 through 28 as if set forth fully in this count.

38. The defendants owed Baptist a duty not to arbitrarily or capriciously revoke or cause to be revoked his parole.

39. Upon information and belief, Doe and Kinard did not perform any investigation to substantiate the charges leveled against Baptist in the Violation Report against Baptist.

40. Lacking probable cause, reasonable suspicion, and contrary to notions of fundamental fairness, Doe and Kinard filed an unsubstantiated Violation Report that lead to the issuance of an arrest warrant of Baptist, thereby breaching their Constitutional duty to him.

41. As a direct and proximate result of the defendants' breach, Baptist suffered harm, including the loss of his car and his job (including past and future lost wages), the loss of his freedom as well as associated emotional harm from being wrongly incarcerated.

Wherefore, Baptist respectfully requests that he be awarded damages in an amount to be proven at trial together with his costs and attorneys fees.

## COUNT IV
## ILLEGALLY INCREASING LENGTH OF PAROLE
## AGAINST DEFENDANT STATE OF ILLINOIS

42. Baptist incorporates by reference paragraphs 1 through 28 as if set forth fully in this count.

43. Illinois is under a duty not to deprive Baptist of liberty without due process.

44. Illinois violated this duty by arbitrarily and without notice or hearing, increasing the duration of his parole and extending the date of his discharge as noted in the preceding paragraphs.

45. As a direct and proximate result of this breach, the State has and will continue to cause him harm in the future for which harm there is no adequate remedy at law.

Wherefore, Baptist respectfully requests that this Court enjoin the State from extending his term of parole and returning it to the term at which it had previously been set, and for costs and attorneys fees.

_____
One of the Attorneys for Plaintiff
Elijah Baptist

Michael R. La Porte
WILDMAN, HARROLD, ALLEN & DIXON
225 West Wacker Drive
Chicago, Illinois 60606-1229
(312) 201-2000

Doc. No.: 1534468 v1

9