IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| Elijah Baptist, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 05 C 768 |
| | ) | |
| Illinois Department of Corrections | ) | The Hon. Milton I. Shadur |
| Correctional Officer S. Ratliff, *et al.* | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**PLAINTIFF ELIJAH BAPTIST'S RESPONSE TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Plaintiff Elijah Baptist opposes Defendant Sheena Ratliff's Motion for Summary Judgment (Doc. No. 53). For the reasons more fully stated below, genuine issues of material fact preclude entry of summary judgment and require a trial on the merits.

**BACKGROUND**

In the summer of 2004, Elijah Baptist had been on parole for over 13 years. Since his release, Baptist had held several jobs. During this particular summer, Baptist had been working for a company called Hecker and Company in Glenview, Illinois. His position with Hecker was as a non-union employee, but he was accumulating credit towards becoming eligible for union membership.

While working one morning, he was approached by a Glenview Police officer. (Defendants' SOF ¶ 19). Ultimately, he was placed under arrest for a warrant for an alleged parole violation. (*Id.*). Baptist was taken into custody and taken to Stateville Correctional

Center.[1] While there, the defendant Sheena Ratliff visited him and presented him with paperwork. (Defendants' SOF ¶ 22; Baptist's SOF ¶¶ 11-13).

Specifically, Ratliff gave him a copy of his Parole Violation Report. ((Defendants' SOF ¶ 22; Baptist's SOF ¶¶ 11-13; s*ee also* Defendants' Ex. B). On the Parole Violation Report, it alleged that Baptist was "AWOL." (*See* Defendants' Ex. B). Baptist knew, however, based on his prior interaction with his parole agent that this was not true. Specifically, Baptist had been told upon his initial release that he was to check in with his parole agent on a regular basis for the first several months of parole. (Baptist's SOF ¶¶ 2-3). But after that time, he only needed to check in if he needed something. (Baptist's SOF ¶3). Nevertheless, Baptist was arrested for supposedly being "AWOL." Incidentally, the Parole Violation report that Ratliff gave to Baptist, which alleged that he was AWOL, was the same report that the Parole Board ultimately ruled was insufficient to support a revocation of Baptist's parole. (*See* Defendants' Ex. B).

Ratliff also gave Baptist a form related to a preliminary hearing. (*Id.*). The form had a section with blanks to be filled in telling Baptist when he was scheduled to have a preliminary hearing. (*Id.*). But the form that Ratliff gave him was blank. (*Id.*). In speaking with Baptist, there is no evidence that Ratliff told him of the purpose of the preliminary hearing or told him that such a hearing would take place unless he waived such a hearing. (Baptist's SOF ¶¶11-13, 22-24). According to Ratliff, what she tells all inmates is that they have a right to such a hearing, but that they could skip that and go "straight to the parole board" if they wanted to. (Baptist SOF

---

[1] The date shown on a screen-shot of the Illinois Department of Corrections OTS system produced by Defendants indicates that the warrant issued for Baptist's alleged parole violation on October 26, 1991, which was only three days after Baptist was first paroled. (Baptist's SOF ¶ 10; Ex. PX-2). Thus, according to the face of the warrant, only three days after being paroled, he was absent without leave or "AWOL." This was the indication on the warrant, despite the fact that Baptist regularly checked in with his parole agent after first being paroled. And, this was the indication on the warrant, despite the fact that the supposed reason for Baptist being AWOL was failure to respond to a tracer letter, which was supposedly sent nearly 9 years after the date on the warrant.

¶¶22-24). According to Baptist, however, Ratliff told him that the only way that he could come before the parole board, is if he signed the waiver sheet. (Baptist SOF ¶ 11-13)

Baptist signed the report as was requested. (See Defendants' Ex. B). Additionally, relying on Ratliff's misstatement that he would go "straight to the Parole Board" if he waived his preliminary hearing, he initialed a box which said he waived that right. But contrary to Ratliff's misleading statement, Baptist did not go "straight to the parole board." (*Id.*) Although he based his decision on Ratliff's promise of a speedy resolution on the merits, Baptist did not actually come before the parole board for a final revocation hearing until nearly three months later. (Defendants' Ex. B; Defendants' SOF ¶¶ 29-30).

At that "final" revocation hearing, Baptist also did not have a lawyer with him. Baptist was not confronted by his accuser – the parole agent who claimed he was AWOL. Nor were any witnesses present or any evidence presented. Instead, when Baptist appeared nearly three months later at this hearing, the Parole Board adjourned, supposedly to investigate Baptist's case further. (Dfendants' SOF ¶ 29).

After this, nearly three weeks passed. Then, on September 24, 2004—75 days after being arrested for supposedly being AWOL, the Parole Board summarily dismissed the charge, finding that the Parole Violation Report was deficient. (See Defendants' Ex. B). The Board gave Baptist no other explanation. But as a result, Baptist was again released back on parole.

Shortly after his release, Baptist returned to get his old job back at Hecker. He was successful in doing so and returned to work there for several months. But in the middle of winter that year, Hecker converted from an open workplace (e.g., mixed union/non-union shop) to a closed shop. But unfortunately for Baptist, he had not earned enough working credit to be eligible to join the union. As a result, Baptist was fired from his job. Had he worked for Hecker

from July to September of 2004, however, he *would have* earned sufficient credit and would have been eligible to join the union, thus preserving his job.

Further as a result of his wrongful re-incarceration, the finance company which held a lien on Baptist's car, repossessed it for non-payment. Baptist was unable to pay because he was back in Stateville awaiting his final parole revocation hearing. The finance company, though, was not able to get at auction enough money to pay off the amount that Baptist still owed. Consequently, on top of having his car repossessed, he also now owed a deficiency on a car that he no longer owned.

Baptist sought compensation for the wrongs that the defendants visited upon him by filing this lawsuit. The remaining defendants, A.C. Kinard and Sheena Ratliff have both moved for summary judgment. Baptist opposes defendant Ratliff's motion, but not that of Kinard. With respect to Ratliff's motion, Baptist sets forth below the reasons that this Court should reject it and set this matter for trial on the merits to resolve the outstanding issues of fact.

## ARGUMENT

Defendants' Motion for Summary Judgment must be denied because genuine issues of fact remain with respect to: (1) whether sufficient notice was given to Baptist of his Constitutional right to a preliminary hearing; and (2) whether Baptist's alleged waiver of this Constitutional right was knowing and voluntary.

Summary judgment is only appropriate if no genuine issues of material fact remain. *See* Fed. R. Civ. P. 56(c); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). When making the determination as to whether genuine issues of material fact exist, the court "must construe all facts in the light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). As set forth in more detail below, fact issues remain with respect both

4

of Plaintiff's claims; therefore, Defendants' Motion for Summary Judgment should be denied in its entirety.

I. **Defendant Ratliff Violated Baptist's Due Process Rights by Failing to Provide Sufficient Notice of a Preliminary Hearing and Failure to Provide Baptist with a Preliminary Hearing.**

Section 1983 was enacted to create a species of tort liability. It gives persons, like Baptist a cause of action against state actors, like Ratliff, for deprivation of rights "under color of law." Put another way, it creates a tort cause of action against state actors, who deprive citizens of their civil rights under the United States Constitution. The "purpose of section 1983 was to interpose the federal courts between the States and the people, as guardians of the people's federal rights – to protect the people from unconstitutional action under color of state law . . .." *Mitchum v. Foster*, 407 U.S. 225, 238-239, 242 (1972); *see also Monroe v. Pape*, 365 U.S. 167 (1961) (describing extensively, the purpose and intent of section 1983).

Section 1983 liability can be premised on violation the rights enumerated in the United States Constitution, including the due process rights encompassed in the Fourteenth Amendment. *See* 42 U.S.C. § 1983. To prevail in a claim under Section 1983, a plaintiff must show that the defendant, (1) acted under "color of law," and (2) deprived him of his constitutional rights. *Id.* Ratliff does not dispute that she was acting under color of law in all respects in this case. Instead, she claims that no constitutional violation occurred and that she is entitled to the defense of qualified immunity. Neither of these claims has merit.

Ratliff deprived Baptist of his constitutional right to adequate notice of and an actual preliminary hearing to determine whether there was cause to hold him for parole revocation hearing. In her supporting brief, Ratliff does not dispute that under *Morrissey v. Brewer*, persons charged with violating a condition of parole are entitled to the minimum requirements of due process, which includes a preliminary hearing to determine whether there is probable cause to

5

believe that the individual violated the conditions of parole. *See* 408 U.S. 471, 485-87 (1972); *see also* 730 ILCS 5/3-3-9 (providing: "[a] person charged with violating a condition of parole or mandatory supervised release shall have a preliminary hearing before a hearing officer designated by the Board to determine if there is cause to hold the person for a revocation hearing). Moreover, Ratliff does not dispute that Baptist never did get a preliminary hearing. Instead, she argues that: (a) her notice to Baptist was adequate; (b) Baptist waived his right to a preliminary hearing; and (c) she is entitled to qualified immunity. For the reasons more fully set forth below, Ratliff is wrong on all counts.

### A. Baptist Was Denied Constitutionally-Adequate Notice of His Constitutional Right to a Preliminary Hearing.

The record shows that there is a genuine issue of fact with respect to whether Ratliff provided sufficient notice that a preliminary hearing will take place. In *Morrissey*, the Supreme Court specifically instructed that: "[w]ith respect to the preliminary hearing . . . the parolee should be given notice that the hearing ***will*** take place ***and*** that its purpose of to determine whether this is probable cause to believe he has committed a parole violation." *Morrissey*, 408 U.S. at 486-87 (emphasis added).

In this case, Ratliff did not inform Baptist of the purpose of a preliminary hearing, nor did she inform him that a hearing "will take place." (Baptist's SOF ¶ 11-13; 22-24). As to the purpose of the hearing, Ratliff never told Baptist that such a hearing was to determine whether there was cause to believe that he had committed a parole violation. (Baptist's SOF ¶ 11-13; 22-24). Ratliff was clear in what she did. She failed to inform each and every inmate on whom she served papers that a preliminionary hearing will take place and that it purpose was to evaluate probable cause. (Baptist's SPF ¶¶ 11-13, 22-24). Specifically, she stated that:

> I serve them all the same way. I would call them up to their door
> and tell them: 'This is your parole violation report. I need you to

6

> sign right here. You're signing for a copy of it. That top one is mine and the bottom one is yours. You have a right to a preliminary hearing. If you want to waive that preliminary hearing and *go straight to the parole board*, you can place your first and last initials in the B box.

(Response to Defendants' SOF ¶ 25; Baptist's SOF ¶ 22-24). Although asked on several occasions, Ratliff never suggested that she told Baptist, or any other inmate, what the purpose of the preliminary hearing would be. This is not insignificant because, as Ratliff admitted in other parts of her deposition, when inmates were informed of their rights, they exercised them to a far greater extent. (Baptist's SOF ¶ 30-33) (testifying that with respect to the "King Decree," notices about inmates' rights had been posted and there had been a significant rise in the number of inmates taking preliminary hearings). Furthermore, in Baptist's case, it was specifically pertinent given the final outcome of the Parole Board, which found the charges unwarranted on their face, and the fact that a speedy return to parole would have meant Baptist earning the credit he needed to become a union member and retain his job.

Moreover, Ratliff never, in fact, told Baptist that a preliminary hearing would take place. (Baptist SOF ¶¶ 11-13, 22-24). Instead, she presented a blank form to Baptist and merely informed him that he had a "right" to a preliminary hearing. (*Id.*). Even though Ratliff knew the date on which such a hearing would be held (Baptist's SOF ¶¶ 26-28), she presented the blank form to Baptist and told him he could waive his right and to "straight to the parole board." (Baptist's SOF ¶¶ 26-28). Ratliff decided to serve all Notices of Charges without filling in a date on which a preliminary hearing would or could take place because, according to her, if such a date was provided, an inmate *would not be able to waive a preliminary hearing*. (Baptist SOF 29). This explanation is inherently incredible and defies logic. Had a date certain been put on the form – which Ratliff admits she knew on the spot when visiting the inmates and serving them with papers – any waiver by the inmate would have been truly voluntary and meaningful (absent,

7

of course, inducement to forego such hearing by implied promises of speed to a full hearing). Instead, leaving the form blank and merely telling Baptist of his "right" to a hearing, but failing to tell him that such a hearing "will" take place, as *Morrissey* commands, is not constitutionally adequate. *See, e.g., Morrissey*, 408 U.S. at 485-87.

Finally, when serving papers on Ratliff, she told him that the only way that he could come before the parole board, is if he signed the waiver sheet. (Baptist SOF ¶ _13_) Conditioning his exercise of a constitutional right (preliminary hearing) on the waiver of another (final revocation hearing) is not only plainly improper, but quite simply demonstrates that the alleged "waiver" of his rights is not knowing and voluntary at all. Although Ratliff did not admit this statement at her deposition, it is a key fact in dispute that precludes summary judgment in this case.

In sum, Ratliff's notice to Baptist, which suggested only that he had a right to a preliminary hearing but failing to provide any information suggesting that such a hearing would, in fact, take place, coupled with her mentioning that upon waiver he would go "straight to the parole" board was not meaningful notice. It was inadequate under *Morrisey*, because it did not inform Baptist the purpose of that hearing. For these reasons, this Court ought to deny Ratliff's motion for summary judgment.

    **B.**    **There are Issues of Material Fact Regarding Baptist's Alleged Wavier of his Constitutional Right to a Preliminary Hearing, Which Precludes Summary Judgment**

There also exists a genuine issue of material fact regarding whether Baptist's "waiver" of his preliminary hearing was knowing and voluntary. Due to the lack of sufficient notice as detailed above, Baptist's alleged waiver of his Constitutional right to a preliminary hearing by checking the B Box on the Notice of Charges was not a knowing and intelligent waiver. Defendants, by contrast, summarily rely on Baptist's act of placing his initials the B Box on the

8

Notice of Charges form as a valid waiver. This dispute as to the material fact regarding Baptist's alleged waiver of his right to a preliminary hearing should be submitted to a jury and precludes Defendants' Motion for Summary Judgment with respect to Defendant Ratliff.

It is well settled that waivers of Constitutional rights must be made knowingly, intelligently, and voluntarily and with sufficient awareness of the relevant circumstances and likely consequences. *E.g., United States v. Dodson*, 25 F.3d 385, 390 (6th Cir. 1994) ("waiver of constitutional right, particularly one involving individual liberty, must be knowingly and intelligently given."); *People v. Stroud*, 208 Ill.2d 398, 403, 804 N.E. 2d 510, 513 (Ill. 2004). The determination of whether an individual has waived his Constitutional rights requires a consideration of the totality of the circumstances surrounding the alleged waiver. *See, e.g.*, *People v. Groleau*, 44 Ill. App. 3d 807, 813, 358 N.E.2d 1192, 1196 (1st. Dist. 1976) (considering police misrepresentations to defendant and failure to inform defendant of key facts in finding defendant's waiver of Miranda rights invalid).

Whether a waiver was voluntary, knowing, and intelligent is a question of fact that is properly submitted to a jury. *Henderson v. DeTella*, 97 F.3d 942, 946 (7th Cir. 1996) (stating that whether a waiver of Miranda rights was voluntary, knowing, and intelligent is a matter of fact involving credibility assessments that typically the trier of fact should make); *Mikel v. Thieret*, 887 F.2d 733, 739 (7th Cir. 1989) ( stating that "whether a wavier was knowing and intelligent remains a question of fact"). In this case, a consideration of the totality of circumstances surrounding Baptist's alleged waiver of his Constitutional right to a preliminary hearing involves consideration of the following factors that give rise to a genuine dispute regarding Baptist's alleged waiver.

First, no date was provided on the Notice of Charges form for the preliminary hearing—that is, Baptist was never told when such a hearing would take place in the event he did not initial in the B Box. (Baptist's SOF ¶¶ 26-28). He was never provided a preliminary hearing date, despite the fact that if he had *affirmatively requested* such a hearing, Ratliff would have known the date on which it would be held, on the spot. (*Id.*). Moreover, Ratliff's representation that Baptist could skip the preliminary hearing and go "straight to" the Parole Board implied that, from a timing perspective, a final hearing would happen quickly enough so as to render the preliminary hearing, essentially redundant. Baptist was never made aware that he would have to wait 75 days to go "straight to the Parole Board"; nor was he ever made aware that the purpose of the preliminary hearing was to determine whether there was probable cause to believe that Baptist committed a parole violation. (*See* Defendants' SOF at ¶¶ 25-26; Baptist's SOF ¶¶ 26-28). A consideration of all of these factors raises a genuine issue of material fact regarding whether Baptist's alleged waiver of his right to a preliminary hearing – which likely would have exonerated him, releasing him from confinement and returning him to his job – was knowing and voluntary. Thus, the Court should deny Defendant's Motion for Summary Judgment.

## II.     Defendant Ratliff is Not Entitled to Qualified Immunity

Ratliff's is not entitled to qualified immunity. Section 1983 defendants are only entitled to immunity from damages actions if their actions are not contrary to "settled law." *E.g. Anderson v. Creighton*, 483 U.S. 635 (1987). If the law with respect to the defendants conduct is not "settled," then there is qualified immunity from suits for damages. *Id.* The law, however, was clearly settled at the time of Baptist's wrongful revocation, that parolees returned to custody are entitled to proper notice and a preliminary hearing under the due process clause of the Fourteenth Amendment of the United States Constitution. *See* U.S. Const. Amend. XIV; *see also Morrissey*, 408 U.S. at 487. Ratliff obviously does not take issue with this fact. Instead, with

10

respect to her qualified immunity argument, she merely argues that there has been no constitutional violation. But as set forth, supra at 6-7, Baptist did not receive constitutional right to sufficient notice and to a preliminary hearing. While it is a disputed issue of fact whether Baptist, in fact, waived that right, this has no bearing on the qualified immunity defense.

## CONCLUSION

WHEREFORE, because defendant Ratliff failed to provide Baptist with constitutionally-adequate notice of his preliminary hearing rights and because he was denied his right to a preliminary hearing, this court should deny her motion for summary judgment. Questions of material fact preclude summary judgment with respect to Ratliff's waiver defense, making summary judgment inappropriate.

Dated: April 6, 2007                                              Respectfully submitted,

                                                                  By: s/ Micahel La Porte

                                                                  Michael R. La Porte
                                                                  Jennifer L. Gregor
                                                                  FOLEY & LARDNER, LLP
                                                                  321 N. Clark St., Ste. 2800
                                                                  Chicago, Illinois 60610
                                                                  (312) 832-4500 (phone)
                                                                  (312) 832-4700 (fax)